### ASSESSING REMODELED BUILDINGS FOR TAXATION.

LEWIS, AUDITOR OF HAMILTON COUNTY, v. THE STATE, EX REL
KRAMER.

69 Ohio State—Decided, February 2, 1904.

*Assessing Realty and New Structures—Section 2753, Revised Statutes
—Remodeled and Improved Old Parts of Building—To Be Valued
and Assessed—Property Owner Not Entitled to Notice of Increase
Assessment—Section 2804, Revised Statutes—Board of Equaliza-
tion and Powers of Same.*

1. Under the provisions of Section 2753, Revised Statutes, an annual
assessor, at the time of taking the lists of personal property, is
required to make and return a list of all new structures of any
kind and affix a value thereto, if the value thereof exceeds $100;
and where the owner of a building, during the preceding year,
has remodeled and reconstructed it internally, and has also re-
constructed with new material some or all of its walls, so as to
substantially enhance the value of the premises, such new parts
and the remodeling and improvement of the old may be listed,
valued and returned by the assessor as new structures within
the meaning of said section.

2. The owner of the premises is not entitled to notice of the increase
so made of the taxable value of his property; and the annual
board of equalization may review and increase the valuation so
returned by the assessor without notice to the owner under Section
2804, Revised Statutes.

Error to the Circuit Court of Hamilton County.

The action in the lower court was in mandamus, wherein the
defendant in error prayed for a writ commanding the Auditor
of Hamilton County to correct his tax-list as to certain errors
set out in the petition and that he be required by the writ to
call the attention of the commissioners of said county to such
errors, to the end that the commissioners may cause to be re-
funded to the relator the amount of taxes erroneously charged
and collected. The relator's property is in the city of Cincinnati,
and the relator alleges that the valuation thereof for taxing

purposes in the year 1899, was in the sum of $5,440, and that Lewis, auditor, in making the tax list and duplicate for the year 1900, listed the same property for taxation at $6,890, being an increase in valuation in the sum of $1,450. The relator charges that the increase was so made by the auditor in consequence of an addition made in that sum by order of the Board of Supervisors of Cincinnati, acting as the annual board of equalization of said city for the year 1900, and without notice of any kind to him, and that erroneous taxes on the property were collected in December, 1900, in the sum of $18.84. The said errors have been called to the attention of the auditor, and he has been requested to call the attention of the commissioners thereto, with a view of obtaining a refunder of the taxes paid.

In answer to the petition of relator, the auditor, in substance says, that during the year prior to April, 1900, the relator placed a new structure upon the real estate by remodeling, altering and almost entirely rebuilding the structures thereon, and that the assessor of the ward in which the premises are situate fixed and returned the valuation of the new structure at $1,100, allowing a deduction of $250 for the destroyed portion of the old structure, leaving the addition of the valuation at $850, and that this amount was returned by the assessor for the year 1900. The answer further relates that after the assessor's returns had been made, the board of supervisors of the city, acting as an annual board of equalization, considered said return, viewed the new structure so made, and found the same to be of the value of $1,450, and ordered the sum to be added to the valuation of the premises. In compliance with the order, the auditor entered the increase on the tax-duplicate for the year 1900, and charged the regular taxes against the same. The auditor claims that the increase was properly made and that he was justified in refusing to call the attention of the commissioners thereto. He also alleges that the relator had full knowledge of the increased valuation for the year 1900, and that he voluntarily paid on this increased valuation, but the relator denies this in the reply.

The court of common pleas found for the relator, Kramer, and granted the writ of mandamus so prayed for. The case was

taken to the circuit court on appeal, where the facts were agreed upon between the parties and which appear in the opinion.

On these, the circuit court found for the relator, and granted the writ of mandamus.

The auditor, Lewis, prosecutes error in this court to obtain a reversal of the judgment of the circuit court.

*Ampt, Ireton, Collins & Schoenle,* County Solicitors, for plaintiff in error.

*Dan Thew Wright,* for defendant in error.

Price, J.; Spear, Davis, Shauck and Crew, JJ., concur; Burket, C. J., not sitting.

The relator, Kramer, relies on the provisions of Section 1038, Revised Statutes, as the ground for his action in mandamus. So much of that section, as is necessary to quote in this proceeding, may be stated as follows:

"The auditor shall, from time to time, correct all errors which he discovers in the tax-list and duplicate  *  *  *  in the amount of such taxes or assessments  *  *  *  and if at any time the auditor discovers that any erroneous taxes on assessments have been charged and collected in previous years, he *shall* call the attention of the county commissioners thereto, at any regular or special session of the board; and if the commissioners find that taxes or assessments have been so erroneously charged and collected, they shall order the auditor to draw his warrant on the county treasurer, in favor of the person or persons paying the same, for the full amount of the taxes or assessments so erroneously charged and collected, and the county treasurer shall pay the same out of any surplus or unexpended funds in the county treasury  *  *  *  but no taxes or assessments shall be so refunded, except such as have been so erroneously charged and collected in the five years next prior to the discovery thereof by the auditor."  *  *  *

His amended petition is framed with the view of compelling the auditor to perform a certain specific duty imposed by the foregoing section, and the lower court, following the averments of the petition thereunder, ordered the auditor to call the attention of the Commissioners of Hamilton County to the erroneous taxes that had been charged and collected against relator's property on account of an addition to its valuation illegally made.

The auditor had refused to call the attention of the commissioners to the errors of the duplicate complained of, and to enforce the performance of this alleged duty is the purpose of the action.

Under the section quoted, if the auditor complies with the request, before suit, or with the writ after suit, and calls the attention of the commissioners to the supposed grievances, and that board finds "that taxes or assessments have been so erroneously charged and collected, they shall order the auditor to draw his warrant on the county treasurer in favor of the person or persons paying the same for the full amount of the taxes or assessments so erroneously charged and collected, and the county treasurer shall pay the same out of any surplus or unexpended funds in the county treasury." * * *

Another clause of the above section is worthy of notice: " * * * and if at any time the auditor *discovers* that any erroneous taxes or assessments have been charged and collected in previous years, he shall call the attention of the county commissioners thereto at any regular or special session of the board, and if the commissioners find," etc. It would seem that before the auditor is required to give information to the board, errors of the kind mentioned must be *discovered* by him. In this case, the auditor strenuously asserts there are no such errors, and therefore he had *discovered* none. Hence he had no information in that respect to impart to the commissioners. Insisting that no errors are on the duplicate against relator and that he has *discovered* none, we observe the use of the extraordinary writ of mandamus to compel him to *discover* them and give information thereof to the commissioners. It will be claimed, however, that he *discovers* that which he ought to discover.

One or more members of this court doubt the right to the remedy in mandamus in such a case, and the reasons for the doubt are quite forcible. But, inasmuch as this court in *Lewis, Auditor* v. *State, ex rel Mullikan,* 59 Ohio St., 37, entertained the remedy by mandamus upon allegations somewhat similar to those made here, invoking the aid of the same section of the statute (Section 1038, Revised Statutes), we have concluded to dispose of the controversy as the parties have made it.

What are the grievances of the relator, Kramer?

The facts agreed upon are: That he owns a lot and building in Cincinnati fronting twenty-eight feet on north side of Court street; the building originally was a three-story brick; in the year 1899 he changed and remodeled it by taking out the entire front and rear walls and replacing them with new walls. The new walls were constructed of two thicknesses of brick, the outside brick being new, and the inside being old brick, taken from old walls. The front wall was faced with new buff pressed brick. On the floors above the ground floor, new bay-windows were constructed, two on each floor extending four feet over the sidewalk. Before the change the ground floor was divided into two store rooms, with a central hall and stairway between them. The upper floors were divided into ten living rooms, five on each floor. As reconstructed these floors were made into sixteen living rooms, being divided into four flats of four rooms each—being eight rooms on each floor. A new roof was constructed on the entire building, and new kitchen plumbing was put on each floor for the use of each flat. The new roof and plumbing is worth more than $100.

In the year 1900, the annual assessor for the ninth ward, where the premises are situate, returned these improvements as a new *structure* at a valuation of $1,100, but allowed a deduction of $250 for the destroyed portion of the building, making a net addition of $850 to be added to the valuation of the property as it then stood on the duplicate. When the board of supervisors, acting as an annual board of equalization, came to consider the returns of the annual assessors, including the return in controversy, and after viewing the premises, found the improvements to be of the value of $1,450 for taxation, and increased the assessor's return $600 and ordered that $1,450 be added to the valuation on the duplicate for the year 1900, which addition was made by the auditor. No notice was served on Kramer of this added valuation under Section 2804, Revised Statutes. Kramer paid the taxes in December, 1900, on the new valuation without protest. So much for the facts.

The action of the annual assessor above described and the proceedings of the board increasing the assessor's return in the sum of $600 are both assailed and branded as not only erroneous, but illegal, and the circuit court ordered the auditor,

because of these errors, to "call the attention of the commissioners thereto," in order that the taxes which Kramer had paid on the increased valuation may be restored to him.

Counsel for the parties, in oral argument and in their briefs, have discussed the various statutory provisions made for the listing of property and collection of taxes; also for the collection of the tax lists and tax duplicates, so that errors of omission and commission may be corrected. But we decline to assume the unnecessary burden of construing all such provisions. It is sufficient to say, that while it is to be lamented that our system of statutes relating to the subject of taxation is not made clearer and more harmonious, it does appear that in its various provisions, the Legislature has intended to reach, for purposes of taxation, the property of every citizen, whatever its form may be, and which is not by law exempt, to the end that all shall bear their just share of the public burdens.

In this case, the action of the annual assessor is said to be justified by Section 2753, Revised Statutes. For the purpose of this case, we quote it in part:

"At the time of taking the lists of personal property the assessor shall also take a list of all real property which shall have become subject to taxation and is not on the tax-list, and affix a value thereto, according to the rules prescribed for district assessors in assessing real estate; and he shall also make and return a list of all new buildings or other structures of any kind of over $100 in value, the value of which shall not have been previously added to, or included in the valuation of the land on which such structures have been erected, specifying the tract or lot of land on which each of such structures has been erected, the kind of structure and the value which, in his opinion, has been added to such tract or lot by the erection thereof." * * *

It is further provided in this section that if the assessor ascertains that any structure of any kind, orchards, timber, or ornamental trees have been destroyed by fire, flood, cyclone, or storm, the value of which is over one hundred dollars, and which have been included in the valuation of the preceding year, he shall determine how much less valuable the tract or lot has been rendered, and make due return thereof.

It will be observed in the part of the section quoted, that the assessor, in performing his duties in relation to new buildings

and other structures, shall proceed according to the rule prescribed for district assessors in assessing real estate, and one of the rules is found in Section 2793, Revised Statutes, as follows:

"For the purpose of enabling the assessor to determine the value of buildings and other improvements, he is hereby required to enter, with the consent of the owner or occupant thereof, and fully to examine all buildings and structures of whatever kind, which are by this title either liable to or exempt from taxation."

In the case at bar no "new buildings" were found by the assessor, nor what can properly be called "additions" to existing buildings.

The case turns on what meaning we attach to the words *"other structures of any kind,"* as found in Section 2753. We are aided in arriving at this meaning by Section 2730, Revised Statutes, which is:

"In this title the terms 'real property' and 'land' shall be held to mean and include not only land itself, whether laid out in town lots, or otherwise, with all things contained therein, but also, unless otherwise specified, all buildings, structures and improvements, and fixtures of whatever kind thereon." * * *

Section 2753 follows in the same title. The "structure" if not over one hundred dollars in value, escapes return, so that minor improvements and repairs are not to be valued. The "structure" contemplated must be of a substantial character, such as to attract attention and show a marked change in the appearance and condition of the property, rather than such change as occurs in making incidental and necessary repairs. The "structure" need not be a "new building," or an addition to an existing building, as an "addition" is generally constructed on the ground and annexed to the original building, or placed on top of the same.

Kramer made substantial changes in his building, as we have seen. Preserving the outlines, dimensions and shape, he made new front and rear walls, using new material for the purpose, in the front more costly and ornamental brick, and constructing bay-windows in the front of the upper stories, thus adding convenience and beauty to the entire building. He remodeled the upper floors and made four flats having in all sixteen rooms.

Did all this constitute a "structure of any kind" within the meaning of the statute? This word certainly is not confined to a structure independent of any other existing building or structure, for such meaning would render the word inoperative.

The Century Dictionary defines the word "structure" as follows:

"A fitting together, adjustment, building, erection, a building, edifice, structure. 1. The act of building or constructing; a building up. 2. That which is built or constructed; an edifice or building of any kind; in the widest sense, any production or piece of work artificially built up, or composed of parts joined together in some definite manner; any construction."

The Standard Dictionary gives a similar definition. Taking the latter branch of the definition, we have no difficulty in reaching the conclusion that the changes made, and new work and material placed in the building by Kramer constitute a "structure" within the meaning of that word as used in the statute.

The conclusion is made somewhat clear by the subsequent language of the section, where the annual assessor is required to note the destruction of *structures*, orchards, timber, etc., by fire, storm, and cyclone, and fix the proper deduction to be made from the former valuation, and return the same to the auditor, so that the owner may have the benefit of a corresponding reduction of valuation.

It has been suggested that in Section 2803, Revised Statutes, provision is made for circumstances like the present wherein the auditor is clothed with authority to act. It reads in part:

"In all cases where any county auditor shall discover, or have his attention called to the fact, that any assessor in any previous year shall have omitted to return, or shall in any future year omit to return any lands, town lots, or any improvements, structures or fixtures thereon, subject to taxation, situated within his county, * * * it shall be the duty of said auditor to ascertain the value thereof for taxation, as near as may be, and to enter said lands, town lots or improvements, upon the duplicate," etc.

In our judgment, this section adds argument in favor of our construction of Section 2753, because it is plain that the duty as to such structures, improvements, etc., rests primarily on the

annual assessor, and it is on his omission of duty that the auditor may proceed and place such property on the duplicate, and fix its taxable value.

In short, all provisions of the tax laws aim at a proper return of all species of property for taxation that is not lawfully exempt, and demonstrate that the state, through its various agencies, is a very industrious tax-gatherer.

Another proposition urged against the charges made against Kramer on the duplicate is, that he received no notice of the increase in valuation of his property, made either by the assessor, or the addition thereto made by the annual board of equalization. This board, after viewing the premises, added $600 to the return made by the annual assessor, and this too without notice to Kramer under Section 2804, Revised Statutes. This is one of the facts agreed upon.

There is no provision that requires the assessor to give notice of an addition that he may make to former valuation. It was the duty of Kramer to list the new structure, and if he did not do so, the assessor could do so while visiting the owner for the purpose of ascertaining what he owned that is subject to taxation. Does the statute (Section 2804) require the annual board of equalization to give notice to the property owner before it can increase the valuation? As bearing upon the question we quote from the section:

"Said board shall have power to hear complaints, and to equalize the valuation of all real and personal property, moneys, and credits within the county, * * *; provided, that said board shall not reduce the value of the real property of the county below the aggregate value thereof as fixed by the state board of equalization, nor below its aggregate value on the duplicate of the preceding year, to which shall be added the value of all new entries and new *structures* over the value of those destroyed, as returned by the several township assessors for the current year; provided, further, that *except as to new structures,* and structures destroyed, and lands and lots brought onto the tax list since the preceding decennial state board of equalization, the annual county board shall not increase or reduce the valuation of any real estate, except upon reasonable notice to all persons directly interested, and an opportunity for a full hearing of the question involved." * * *

It is quite obvious from the above language that as to new structures and certain other property described, no notice to

Kramer was necessary, and the annual board, whose time of meeting is fixed by statute, may increase the value placed on new structures by the annual assessor without previous notice to the owner of the property.

The new structure in question was not in existence at the preceding decennial valuation, but came into existence during the running of the decennial period, and it would seem that from the tenor of Section 2804, there is no inhibition against the annual board adding the value of a new structure without notice to the owner. It was his duty to have listed the structure himself, and the board was undertaking to perform an omitted duty.

In *Glenn et al, Excrs.,* v. *Raine, Auditor,* 55. Ohio St., 682, this court affirmed the judgment of the Superior Court of Cincinnati at General Term, wherein a question very similar to ours was decided (See 30 W. L. B., 30). In that case, Hunt, J., speaking for the court, sums up the controversy as follows:

"There is nothing in the law requiring the board of equalization, before it reviews the action of the ward assessor in the matter of new structures, to serve notice on the owner. No such construction has been given our tax legislation, and a careful examination of the law shows no provision which requires it to be done." * * *

A careful reading of that case convinces us that the principle there announced, met the approval of this court in *Glenn* v. *Raine, Auditor,* 55 Ohio St., 682.

On the whole case as it appears in the record, we hold that the circuit court erred in awarding mandamus, and its judgment is reversed, and the petition of the relator is dismissed.